UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN KELLY

       Plaintiff,

v.

MOUNT CLEMENS REGIONAL MEDICAL
CENTER, and PATRICIA KING,

       Defendants.
_____/

Case No. 11-11790

Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 21ST of November, 2012

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion to Strike Attorney's Lien and for Refund of Attorney's Fees Paid (Docket #28). Plaintiff asks the Court to preclude her former counsel, Nanette L. Cortese, Esq. and The Cortese Law Firm, P.L.C. (collectively, "Counsel"), from receiving any of the proceeds of the settlement Plaintiff negotiated with Defendants Mt. Clemens Regional Medical Center (the "Hospital") and Patricia King (collectively, "Defendants") and to have the monies she has paid to Counsel be refunded to Plaintiff. Counsel has filed a response. No reply was filed. The Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the Motion be

resolved on the briefs submitted by the parties, without this Court entertaining oral arguments. For the reasons that follow, Plaintiff's Motion is DENIED.

## II.  BACKGROUND

Plaintiff was employed by the Hospital until the Hospital terminated Plaintiff on March 11, 2009, because she allegedly violated the Hospital's workplace smoking policy while on a Last Chance Agreement for poor attendance.

On May 17, 2010, Counsel met with Plaintiff for an initial meeting. During that meeting, Plaintiff related to Counsel that she had: (1) been employed by the Hospital as a Registered Medical Technologist, (2) executed a Last Chance Agreement, and (3) been terminated, based upon the Hospital's claims that she had been smoking in a restroom.  Shortly after that initial meeting, Counsel sent Plaintiff a letter, wherein Counsel identified several potential problems or issues with Plaintiff's case: (1) Plaintiff acknowledged that she may not have explicitly stated that her absence was Family and Medical Leave Act ("FMLA") related when calling in while she allegedly was on FMLA leave, (2) Plaintiff had not submitted a re-certification to the Hospital with respect to such leave, and (3) the Department of Labor had declined to pursue a charge on Plaintiff's behalf. This May 26, 2010, letter makes clear that Counsel would not be able to represent Plaintiff strictly on a "contingency" basis and informed Plaintiff that, "[i]f you wish to proceed with your matter[,] my Firm would be willing to represent you on a blended, hourly contingency basis. . . . In order to do this I would require a $1,500.00 retainer."  In that letter, Counsel also advised Plaintiff (emphasis added):

> Please be advised that you certainly have the right and may wish to consult
> with other attorneys as they may have a different analysis of your case than I

did. **Further, you should be advised that your case may be subject to various statutes or other periods of limitation and if you are interested in pursuing it you should take action as soon as possible.**

On June 23, 2010, Counsel sent Plaintiff an "Agreement for Legal Services" ("Agreement I"), and Plaintiff executed Agreement I on July 5, 2010. Rather than the $1,500 retainer proposed by Counsel for complete representation, however, Plaintiff paid Counsel a retainer of $200 in order for Counsel to complete the following task, as expressly set forth in Agreement I (emphasis in original):

> **WORK COVERED BY THIS AGREEMENT:** At the request of the client, the firm shall engage in the following work for the client, which is generally as follows:
>
> **Drafting letter to employer regarding claims.**

Agreement I also expressly stated what was not included within the scope of the work to be provided by Counsel:

> **WORK NOT COVERED BY THIS AGREEMENT:** If the client has or needs legal services which are not described in this agreement or which is not directly related to the work described in this agreement, such work is not covered by this agreement and unless otherwise expressly agreed to by the firm, the firm is not undertaking representation of those other matters on behalf of the client. Services beyond the work described above including any claims for worker's compensation are not included under this Agreement.

In furtherance of Counsel's obligation pursuant to Agreement I (*i.e.*, drafting a letter to Plaintiff's employer), Counsel sent a letter to the Hospital on July 27, 2010. Counsel also sent a second letter to the Hospital on September 3, 2010.

On or about September 28, 2010, Plaintiff and Counsel had a telephone discussion. On October 1, 2010, Counsel sent Plaintiff a letter and a second "Agreement for Legal Services" ("Agreement II"). In the October 1, 2010, letter, Counsel wrote:

> In that [September 28, 2010] conversation[,] you stated that you did want to proceed with a lawsuit against [the Hospital]. As I indicated, I would be willing to handle a claim against your employer for your termination on a blended hourly contingency matter, billing you at $75.00 per hour and any costs or expense and 15% of any ultimate recovery. As I had indicated to you, I would need a $750.00 retainer in order to proceed.

Plaintiff signed Agreement II on October 8, 2010, but the invoices generated by Counsel for Plaintiff reflect that Plaintiff did not pay Counsel the $750.00 retainer until November, 2010. Plaintiff has not submitted to the Court any documentation that would demonstrate otherwise.

Plaintiff provided Counsel with voluminous documentation regarding her case which Counsel reviewed prior to filing a Complaint on Plaintiff's behalf. Plaintiff believed that Defendant Patricia King, her manager, had taken actions against Plaintiff, including failing to properly account for her absences and tardies and issuing corrective actions against Plaintiff for the purpose of getting Plaintiff terminated. On that basis, Counsel satisfied herself that if, as Plaintiff stated, King had taken actions against Plaintiff with malice and with the purpose of causing her employment to be terminated and that, as such, there was a viable claim under Michigan Law for tortious interference with Plaintiff's employment by the Hospital. Counsel states that she made the strategic decision that it could be desirable for Plaintiff to have her case filed in Macomb County Circuit Court, taking into account "the fact that the filing fee was less . . . and taking into account that a jury pool in Macomb County Circuit Court would be drawn from Macomb County residents." Therefore, after ascertaining that there was at least a good faith basis for filing a Complaint on Plaintiff's behalf, Counsel filed the Complaint on February 10, 2011, in the Macomb County Circuit Court. Defendants removed the case to this Court, and this Court retained the federal (FMLA) claims and remanded the state claims to Macomb County Circuit Court.

Thereafter, Counsel submitted monthly invoices to Plaintiff for Counsel's activities on the Plaintiff's file.  In the summer of 2011, Counsel engaged in settlement discussions with counsel for Defendants and, on or abut June 28, 2011, Defendants were willing to settle for $7,500.00.  As set forth by counsel for Defendants:

> That amount is not only based on our belief that your client's claims lack merit, but also the fact that your client secured comparable employment shortly after Mt. Clemens Regional Medical Center terminated her employment.  That comparable employment limits any potential claim by your client for economic damage.

Counsel communicated Defendants' offer to Plaintiff, but Plaintiff rejected the offer.  On August 11, 2011, Defendants increased their offer to $8,500.00, which offer was also communicated to, and declined by, Plaintiff.

On August 16, 2011, Counsel informed Plaintiff:

> If you do not want to settle your case at this time[,] that is certainly your prerogative. As we go forward[,] the Defendant will want to take your deposition and we will need to take the depositions of their witnesses. As a result, I must request that if you do want to proceed with this case[,] I will need you to pay the balance on your bill and to furnish $1,000 on retainer since there will be significant costs and time going forward.

Plaintiff, on or about September 1, 2011, demanded $23,500.00. On September 2, 2011, Counsel emailed Plaintiff that: "I am attaching your most recent bill showing that the balance is now over $1000.  I need this bill paid in fully by September 12, 2011 or I will be required to withdraw."  On September 3, 2011, Plaintiff stated, "Okay Nanette, yes of course, I will pay you the outstanding fees. Let's do it." On September 7, 2011, Plaintiff emailed Counsel, "And if [the Hospital] will not settle, then I will have to ask you to withdraw and start looking for another attorney that will work on a contingency basis. I'm sorry."  On September 8, 2011, Counsel emailed Plaintiff in response to Plaintiff's September 7, 2011, email:

5

> I understand but I will need you to make arrangements to get the back due balance caught up and I will have, to the extent permitted by law, a lien on any settlement or verdict that your new attorney gets to the extent that it is based on work that I did[,] since I took your case on a blended hourly contingency. Thank you and I will let you know the status of the negotiations.

On September 21, 2011, Counsel again reiterated that she would be filing a Motion to Withdraw if Plaintiff did not get the bill caught up.

Counsel filed her Motion to Withdraw in this Court on October 5, 2011. Counsel filed a motion to withdraw in the Macomb County Circuit Court Case on October 11, 2011. At the October 17, 2011, motion to withdraw hearing in Macomb County Circuit Court, Counsel requested that Plaintiff be given ninety days to find a new attorney. The Macomb County Circuit Court Judge allowed Counsel to withdraw and stayed the case for forty-five days to allow Plaintiff to obtain a new attorney or to proceed in pro se. The hearing on the Motion to Withdraw before this Honorable Court was ultimately held on November 29, 2011. An order permitting Counsel to withdraw in this Court was entered on December 6, 2011, which order provided that: (1) the proceedings were stayed for thirty days in order to allow Plaintiff to find a new attorney, and (2) all dates under the Court's Scheduling Order for extended for ninety days.

Defendants filed a Motion for Summary Judgment in this case on March 14, 2012. Defendants argued, in part, that the statute of limitations had expired two years from the date of Plaintiff's "fourth and final corrective action for excessive absenteeism and tardiness" (October 2, 2008), not on the date of the termination of her employment (March 11, 2009). In the alternative, Defendants argued that Plaintiff could not establish a claim of FMLA interference or retaliation.

Plaintiff did not hire a new attorney, and she did not attempt to respond to Defendants' Motion for Summary Judgment. Instead, Plaintiff negotiated a settlement with Defendants.

Plaintiff claims she was required to accept a lower settlement because of the argument which Defendants raised regarding the applicable statute of limitations.

## III. ANALYSIS

Plaintiff asserts that Counsel's attorney's lien should be struck, and prior payments refunded, for the following reasons: (1) Counsel's negligence resulted in Plaintiff's complaint being filed after the expiration of the applicable statute of limitations period, and (2) Counsel abandoned Plaintiff at a critical stage of the litigation, essentially without notice. The Court finds both arguments wholly lacking in merit.

First, Plaintiff presumes that her case was filed after the applicable two-year statute of limitation period, as Defendants asserted in their Motion for Summary Judgment. The Court notes, however, that no determination regarding the merits of Defendants' statute of limitations argument was made, as the case settled. Second, assuming that the statute of limitations argument was accurate and Plaintiff's FMLA claim was subject to dismissal on that basis, the Court finds that Counsel was not negligent with respect to filing the Complaint. As Agreement I clearly states, Counsel was retained in June/July 2010 for the purpose of "Drafting [a] letter to employer regarding claims." Counsel fulfilled her obligations required by Agreement I; in fact, she sent two such letters. Plaintiff did not retain Counsel to file a lawsuit until October 8, 2010 (and did not pay the $750 retainer until November 2010). Assuming the two-year statute of limitations expired on October 2, 2010, as Defendants asserted, Plaintiff did not: (a) sign the letter to retain Counsel until six days after the applicable statute of limitations period expired, and (b) pay the retainer amount until at least four weeks after October 2, 2010. Thus, the fact that the Complaint was filed after October 2, 2010,

was not Counsel's fault, as Counsel was not hired to file the Complaint until after the allegedly applicable two-year statute of limitations had expired. Moreover, as Counsel made clear in her May 26, 2010, letter to Plaintiff, there were timing concerns regarding Plaintiff's claims:

> you should be advised that your case may be subject to various statutes or other periods of limitation and if you are interested in pursuing it you should take action as soon as possible.

Notwithstanding that express warning in late May 2010, Plaintiff elected not to retain Counsel to file a lawsuit until the fall of 2010, at least five months later.

Third, Counsel did not abandon Plaintiff at a critical stage of the litigation without adequate notice, nor did she do so unreasonably. As the emails between Plaintiff and Counsel make clear, beginning no later than August 16, 2011, Counsel repeatedly requested that Plaintiff make payment on her balance due and warned Plaintiff that Counsel would have to withdraw if Plaintiff's bill was not promptly paid. As such, by the time Counsel filed her Motion to Withdraw in this case, Counsel had been requesting payment from Plaintiff for a month and a half. In addition, even prior to demanding payment, Counsel had communicated two offers of settlement, one of which was three times the amount for which Plaintiff ultimately settled the case. Therefore, despite Plaintiff's assertion to the contrary, the Court concludes Counsel had good cause to withdraw and did not violate her professional obligations to Plaintiff when doing so. In fact, this Court previously reached that conclusion when it granted Counsel's Motion to Withdraw in this Court after the November 29, 2011, hearing. Simply put, Plaintiff signed Agreement I and Agreement II, both of which constituted reasonable fee agreements. As such, Plaintiff was obligated to pay Counsel pursuant to the fee arrangements set forth in such agreements and, when she did not fulfill her obligations, Counsel was entitled to withdraw.

Accordingly, for the foregoing reasons, the Court concludes that: (1) Counsel was not negligent with respect to the timing of filing the Complaint, and (2) Counsel did not abandon Plaintiff.  Therefore, the Court holds that: (a) Plaintiff is not entitled to an order from this Court to strike the attorney's lien filed by Counsel or a refund of any amounts Plaintiff previously paid Counsel, and (b) Plaintiff's Motion is denied.

### IV.  CONCLUSION

Accordingly, and for the reasons set forth above, Plaintiff's Motion to Strike Attorney's Lien and for Refund of Attorney's Fees Paid (Docket #28) is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**Dated:** November 21, 2012